MRS. VIOLA BURGESS, Administratrix, v. NORTH CAROLINA
ELECTRICAL POWER COMPANY.

(Filed 23 February, 1927.)

**Master and Servant—Employer and Employee — Negligence — Duty of
Master—Safe Instrumentalities—Inspection—Evidence—Nonsuit.**

Where there is evidence that a lineman of an electric transmission, etc.,
company is required in the course of his employment to climb poles
erected to support the overhead wires, by the use of steel spurs or "climb-
ers" strapped to his feet which would probably slip on imperfect poles and
cause him to fall to the ground to his injury, and the poles had been
selected by the defendant or its agents, and under the foreman's require-
ments the lineman attempted to climb a defective pole, and fell and was
fatally injured by reason of an improper pole, under the principle that
the master is required by ordinary care to inspect the instrumentalities
it provides in such instances, it is sufficient for the determination of the
jury upon the issue of the defendant's actionable negligence, and without
further evidence the questions of contributory negligence and assumption
of risks do not arise.

Appeal by defendant from *Schenck, J.,* at September Term, 1926, of
Buncombe. No error.

Action to recover damages for the wrongful death of plaintiff's intes-
tate, who at the time of his death was engaged in the performance of
his duties as a lineman, employed by defendant. His death was the
result of injuries sustained by him when he fell from a pole, which he
was climbing in order to do his work as a lineman.

The pole from which plaintiff's intestate fell had been recently installed in a new line which defendant was constructing for the transmission of electricity by means of wires strung on cross-arms placed near the top of the poles in said line. In order to perform his duties as a lineman, plaintiff's intestate was required to climb the poles and to work on the cross-arms. To enable him to climb the poles, he used, as defendant well knew, metal appliances, known as "climbers," which were strapped to his feet and legs; each "climber" contained a sharp spike, which when forced into the pole, supported him as he climbed the pole. If the pole was sound and firm, the spikes, as they were alternately forced into the pole, would hold, and support his weight, as he climbed toward the top of the pole; if it was not sound and firm, the spike upon which he rested his weight would not hold, but would tear loose, leaving him hanging on the pole, without support. In this situation there was great probability that he would fall to the ground, and thereby be injured.

Plaintiff alleges that the pole from which her intestate fell was defective in that at the time it was selected for use in defendant's line it was too soft to hold his spikes as he climbed it; that when he had climbed the pole a distance of 20 or 25 feet from the ground, the spike upon which he was supporting his weight tore loose from the pole, because the pole was too soft to hold it, thus causing him to fall and to sustain the injuries from which he died; that defendant knew or would have known, had it made a reasonable inspection at the time of its selection, that the pole was then defective in the respect which caused the spike to tear loose; that defendant was negligent in using this defective pole in its line, and that such negligence was the proximate cause of the fall, resulting in the fatal injuries.

Defendant denied that the pole was defective as alleged in the complaint, or that, if the pole was too soft, it was negligent in selecting and using the pole in its line; in defense of plaintiff's recovery defendant pleads contributory negligence and assumption of risk by plaintiff's intestate.

The issues submitted to the jury were answered as follows:

1. Was the plaintiff's intestate, John Harper Burgess, injured by the negligence of the defendant, the North Carolina Electrical Power Company, as alleged in the complaint? Answer: Yes.

2. Did the plaintiff's intestate, John Harper Burgess, contribute to his injuries by his own negligence, as alleged in the answer? Answer: No.

3. Did the plaintiff's intestate, John Harper Burgess, assume the risk of being injured in the manner and way in which he was injured, as alleged in the answer? Answer: No.

4. What damages, if any, is the plaintiff, Viola Burgess, administratrix, entitled to recover of the defendant, the North Carolina Electrical Power Company? Answer: $8,000.

From the judgment rendered upon this verdict, defendant appealed to the Supreme Court.

*George M. Pritchard, McKinley Pritchard and Oscar Stanton for plaintiff.*

*Merrimon, Adams & Adams for defendant.*

CONNOR, J. There was evidence tending to sustain the allegation in the complaint that the pole from which plaintiff's intestate fell, while engaged in the performance of his duties as a lineman, employed by defendant, was soft, and that this condition of the pole was the cause of his fall, resulting in injuries from which he died.

There was no evidence from which the jury could find that defendant knew, at the time the pole was selected for use in its line, or at the time plaintiff's intestate undertook to climb the pole, in the performance of his duties as a lineman, that the pole was defective in this respect. Want of knowledge, however, by an employer of a defect in an appliance or instrumentality furnished by him to be used by his employee, in the performance of his duties, does not necessarily relieve the employer of liability for damages resulting from injuries sustained by the employee, because of such defect. It is ordinarily the duty of the employer to make a reasonable inspection of the appliance or instrumentality, at least at the time of its selection, in order to determine whether or not it is free from defects discoverable by such inspection. A breach of this duty is negligence and if such breach results in damage, the negligence is actionable.

There was evidence from which the jury could find that defendant's foreman, who was in charge of the construction of the new line, and under whom plaintiff's intestate was at work, inspected the pole from which plaintiff's intestate fell, in order to ascertain whether or not it was a proper and suitable pole to be used in its line. Whether or not, upon all the evidence, such inspection as the jury might find was made by said foreman, was a reasonable inspection and a performance by defendant of its duty to plaintiff's intestate, to exercise reasonable care in the selection and use of said pole, was properly submitted to the jury, unless upon the facts of this case defendant owed no duty to plaintiff's intestate to make an inspection of the pole, at the time of its selection for use in the line, in the construction of which plaintiff's intestate was employed as a lineman.

Upon its motion, at the close of all the evidence, for judgment dismissing the action as upon nonsuit (C. S., 567), defendant contended

that it owed no duty to plaintiff's intestate, an experienced lineman in its employment, to inspect the pole, either at the time said intestate undertook to climb the pole, or at the time it was selected for use in its line, in order that it might discover whether or not the pole was too soft to hold his climbers. It contends that because of the peculiar duties which a lineman undertakes to perform for his employer the duty of inspecting poles which he is required to climb, and upon which he is required to work, is imposed by law upon the lineman and not upon his employer.

A similar contention made by the defendant in *Terrell v. Washington,* 158 N. C., 282, was not sustained by this Court. Plaintiff in that case was a lineman; while he was at work as an employee of defendant, near the top of a pole, supporting himself by a belt around his body, fastened to the pole, and by spikes strapped to his feet, and driven into the pole, the pole fell to the ground, causing him serious injuries. There was evidence tending to show that the pole was rotten and in very bad condition several inches under the ground, and that it broke 3 or 4 inches below the surface of the ground. The pole had been standing three years. There was evidence also tending to show that the pole was not sound or strong at the time it was selected for use by defendant, and that this fact could have been discovered by ordinary inspection. Defendant contended that the duty of inspection rested upon plaintiff, a lineman, and not upon defendant, his employer. Referring to authorities cited by defendant's counsel in support of this contention, it is said in the opinion of the Court by *Walker, J.,* "We believe that they all hold that this principle does not apply if the pole was originally unsound and unfit for use, and that it is the duty of a telegraph, or telephone, or electric light company, when it selects a pole for use in its line, to inspect it for the purpose of ascertaining if it is sound and fit." In the Case Note to be found in 21 L. R. A. (N. S.), 774, it is said: "The great weight of authority supports conclusion reached in the above case *(Lynch v. Traction Co.,* 153 Mich., 174, 116 N. W., 983), that an experienced lineman assumes the risk of the breaking of any pole he is called upon to climb in the course of his employment, if the defect which caused the pole to break was not of original construction, and that therefore his employer owes him no duty to inspect the pole before sending him upon it." See cases cited.

The evidence in the instant case tended to show that the defect in the pole which caused plaintiff's intestate to fall existed at the time the pole was selected by defendant's foreman for use in the line in process of construction, and that it could have been discovered by an ordinary inspection. The foreman selected the pole, and directed plaintiff's intestate and other employees of defendant to use the pole. Before selecting

said pole it was the duty of defendant's foreman to make a reasonable inspection of the pole, having in mind that linemen in the employment of defendant would be required to climb the pole after it was installed by using spikes strapped to their feet. The failure to make such inspection, if found by the jury, was negligence, and defendant is liable for damages resulting from such negligence. It cannot be held, upon all the evidence, as a matter of law, that plaintiff's intestate by his own negligence contributed to his injuries, or by his contract of employment assumed the risk of such injuries. Issues involving these defenses were properly submitted to the jury.

There was no error in overruling the motion for judgment dismissing the action as in case of nonsuit. Defendant's assignment of error based upon its exception to the ruling upon said motion is not sustained.

Other assignments of error based upon exceptions to the admission or exclusion of testimony as evidence, and upon exceptions to instructions in the charge to the jury have been carefully considered; they cannot be sustained. The judgment is affirmed. We find

No error.